IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE L. ROBINSON, #B10216, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| DAVID RAINS, TIMOTHY FRAPP, SHAH, PHIL MARTIN, and WEXFORD HEALTH CARE INC., | ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 17−cv–1370−SMY

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Maurice Robinson, an inmate at Shawnee Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Robinson Correctional Center ("Robinson"). Plaintiff claims that the defendants have been deliberately indifferent to his serious medical issues, failed to accommodate his disability, and violated his due process rights. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune

1

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations[1]: Defendant Shah, a medical doctor, refused to provide Plaintiff with a cane after he requested one "because it became difficult for [him] to walk" long distances within the prison. (Doc. 1, p. 5). On February 13, 2017, Shah examined Plaintiff's amputated leg and discovered irritation from where his leg rubbed into his prosthetic. *Id.* Plaintiff asked about a cane to alleviate the soreness, but Shah denied the request, claiming that Plaintiff walked too well and that he could prescribe pain medication to ease Plaintiff's pain. *Id.*

Plaintiff sent Defendant Martin, the Health Care Administrator, grievances about this issue on January 28, 2017, February 26, 2017, and March 3, 2017. *Id.* Plaintiff was not given a

---

[1] At times, the allegations in Plaintiff's Complaint are incomprehensible. The allegations recited herein are this Court's best interpretation of the Complaint.

cane despite him sending these grievances. *Id.*

On March 3, 2017, Plaintiff was approached by C/O McNair about him no longer being "on the slow walker permit or memorandum for A.D.A. participants." *Id.* Plaintiff had been assigned an ADA attendant, Mark Stanko, because his leg was bothering him. (Doc. 1, p. 8). On March 3, 2017, Defendant Frapp noted that he felt Plaintiff did not need an ADA attendant for help because he thought Plaintiff could carry his own tray. (Doc. 1, pp. 5-6). Lieutenant Frapp then fired Stanko and had C/O McNair write him a disciplinary ticket for assisting Plaintiff. (Doc. 1, p. 8). Plaintiff sent a grievance regarding these issues to Defendants Martin, Shah, and Rains, as well as to Counselor Carrell and Grievance Officer Erickson. (Doc. 1, p. 6).

Also on March 3, 2017, Plaintiff spoke with Warden Rains about his slow walking privileges and his cane situation, and he responded that Plaintiff had concurred with Lieutenant Frapp's decision to take Plaintiff off the slow walker line movement. *Id.* Plaintiff grieved these issues. *Id.* Plaintiff mentioned Frapp and Rains in his grievance dated March 3, 2017. *Id.*

On July 4, 2017, Plaintiff had an adjustment committee hearing for which Frapp was the adjustment committee chairperson. *Id.* Rains also signed off on two major infractions with "2 months segregation, 2 months C-Grade, 6 months revoke, and a disciplinary transfer." *Id.*

Upon arriving at Shawnee Correctional Center, Plaintiff was placed in segregation for 42 days. *Id.* He was screened by a nurse on August 31, 2017. *Id.* His leg was irritated during this time, and the nurse put Plaintiff in to see someone for a cane. *Id.* On September 7, 2017, Plaintiff was seen by a nurse who ordered him a cane.[2] *Id.* Plaintiff tried to grieve this issue with the administrative review board, but his grievances were denied. *Id.* Plaintiff is awaiting a

---

[2] In his Complaint, Plaintiff wonders whether "health care administration [is] different from Robinson [to] Shawnee Corr. Center or [if] Wexford Health Care Inc. [is] going un-noticed for their staff conduct of becoming involve[d] in civil procedure." *Id.* It is not entirely clear what Plaintiff means by this.

3

response on certain matters pertaining to his July 2, 2017 and October 16, 2017 grievances regarding the violation of his due process right to a fair hearing by Frapp and Rains. *Id.*

Plaintiff further alleges that Wexford "has a widespread practice of understaffing (Robinson Corr. Center) medical staff so prisoners are unable to obtain the treatment they [require]." (Doc. 1, p. 10). Wexford also allegedly "lacks a procedure for the treatment of individuals who don't react to normal numbing [techniques]." *Id.*

Plaintiff requests monetary damages, unspecified injunctive relief, a declaratory judgment, "restoration of good time," and "expungement of record." (Doc. 1, p. 11).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical need involving his prosthesis and pain associated therewith in violation of the Eighth Amendment.
>
> **Count 2 –** Defendants violated the ADA and/or the Rehabilitation Act by failing to provide Plaintiff with a cane to facilitate his walking within the prison, firing Plaintiff's ADA attendant, and taking Plaintiff off the slow walker line movement.
>
> **Count 3 –** Frapp and Rains violated Plaintiff's due process rights by failing to provide Plaintiff with a fair disciplinary hearing on July 4, 2017.

As discussed in more detail below, Counts 1 and 2 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard. To the extent Plaintiff sought to bring claims against individuals or entities not included in the case

caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Complaint but not included in the case caption or list of defendants include: Counselor Carrell, Grievance Officer Erickson, and C/O McNair.

## Count 1 – Deliberate Indifference

The Eighth Amendment protects inmate from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). "Deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need (a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Given Plaintiff's need for a prosthetic and the pain he experiences, the Court finds that Plaintiff has satisfied the first element at this stage. With respect to the subjective standard, Plaintiff alleges that Shah refused to provide him with a cane after it became difficult for him to walk. He also his claims that Frapp fired his ADA attendant who helped him carry his food tray. Plaintiff also suggests that it was Frapp's decision to take Plaintiff off the slow walker line movement, despite his prosthetic and the issues he was experiencing.

Plaintiff further alleges that he notified Martin of his need for a cane with three separate grievances in January, February, and March, but Martin never acted to remedy his situation, which he presumably was capable of doing given his position as the Health Care Administrator. With respect to Rains, Plaintiff claims that he spoke with him about the aforementioned issues

5

and that he did nothing to help him. At this early stage, these allegations are sufficient to satisfy the subjective component of Plaintiff's deliberate indifference claim against Rains, Frapp, Shah, and Martin. Count 1 will therefore process against these defendants.

As to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff has not alleged that any of the individual defendants either acted or failed to act as a result of an official policy espoused by Wexford. Instead, he generally claims that Wexford understaffs Robinson and does not have a procedure for the treatment of certain individuals. He does not sufficiently plead that these alleged policies or deficiencies were to blame for the other defendants' deliberate indifference to his medical needs. Therefore, Plaintiff cannot maintain a deliberate indifference claim against Wexford, and Count 1 shall be dismissed as to Wexford, without prejudice.

## Count 2 – ADA and/or Rehabilitation Act

Plaintiff does not specifically assert a claim against the defendants under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, or the Rehabilitation Act, 29 U.S.C. §§ 794-794e. However, courts "are supposed to analyze a litigant's claims and not just legal theories that he propounds," particularly when a litigant is proceeding *pro se*. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2010) (citations omitted). On this basis, the Court will *sua sponte* recognize claims under the ADA and/or Rehabilitation Act (Count 2).

Count 2 is based upon some of the same allegations that underpinned Count 1 regarding the defendants' deliberate indifference to Plaintiff's medical needs related to the prosthetic. The

6

ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012).

In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Jaros*, 684 F.3d at 667. Thus, the two statutory schemes are applicable to this situation.

"Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672. Plaintiff has an amputated leg with a prosthetic that hinders his movement over long distances and causes him pain. As such, the Complaint allegations suggest that he suffers from a disability as defined in the ADA and Rehabilitation Act.

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court concluded that a disabled inmate can sue the State for money damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" if the conduct in question also constitutes deliberate indifference in violation of the Eighth Amendment

7

prohibition against cruel and unusual punishment. *Id.* at 157–159. The Seventh Circuit has also recognized that, in a prison setting, access to meals and certain housing facilities, including showers, toilets and sinks, are among the programs and activities protected by the ADA and the Rehabilitation Act. *Jaros*, 684 F.3d at 672; *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998).

Here, Plaintiff alleges that prison officials failed to provide him with a cane to assist him with walking to and from prison facilities and to relieve the pain he was experiencing due to his prosthetic. He also claims that he was taken off the slow walker line movement despite his need for it, and that his ADA attendant, who assisted him in getting his food tray, was fired. Taking these allegations as true, the Court finds that Plaintiff has sufficiently alleged that was deprived of "programs" protected by the ADA and Rehabilitation Act.

Plaintiff's need for an accommodation seems obvious and sufficient to impute that knowledge to prison officials. *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196–98 (10th Cir. 2007); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006). Moreover, Plaintiff made the defendants aware of his need for accommodation either through detailed grievances or in face-to-face conversations. Thus, Count 2 states colorable ADA and Rehabilitation Act claims, but that does not end the analysis.

Although Plaintiff has named a number of officials in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted). Therefore, Plaintiff's claims in Count 2 will be dismissed as to the

individual defendants, with prejudice. Instead, Count 2 shall proceed against the Illinois Department of Corrections, and the Clerk shall be directed to add this entity as a party Defendant.[3]

### Count 3 – Due Process

Plaintiff's claim that his disciplinary proceeding violated his right to due process is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). *See Elcock v. Whitecotton*, 434 F. App'x 541, 543 (7th Cir. 2011). In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court recognized that some prisoner cases appear to straddle the line between what is actionable under 42 U.S.C. § 1983, and what falls under the purview of habeas corpus under 28 U.S.C. § 2254:

> Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement.

*Muhammad*, 540 U.S. at 750–751.

*Muhammad* is premised upon *Heck* and *Balisok*. In *Heck*, the Supreme Court held that a Section 1983 claim for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not a cognizable claim until that conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486–87. In *Balisok*, the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [an inmate's] good time credits" are not

---

[3] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party."

cognizable under Section 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. *Balisok*, 520 U.S. at 646-48.

*Balisok* is particularly instructive to this case. Plaintiff was found guilty in his disciplinary hearing and disciplined with, among other things, revocation of six-months of good conduct credit, which he at least implies was in retaliation for his including Frapp and Rains in his grievances. His due process claim is therefore not cognizable unless and until the revocations are invalidated via administrative remedy or habeas action. Count 3 will therefore be dismissed without prejudice.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) which is **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

**Disposition**

The **CLERK** is **DIRECTED** to **ADD** the **ILLINOIS DEPARTMENT OF CORRECTIONS** as a defendant in this action.

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **RAINS**, **FRAPP**, **SHAH**, and **MARTIN**. **COUNT 1** shall be **DISMISSED** as against **WEXFORD HEALTH CARE INC.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS**. **COUNT 2** shall be **DISMISSED** without prejudice as against all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **be DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that **WEXFORD HEALTH CARE INC.** shall be **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for **RAINS**, **FRAPP**, **SHAH**, **MARTIN**, and the **ILLINOIS DEPARTMENT OF CORRECTIONS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 13, 2018**

*s/ Staci M. Yandle*
***U.S. District Judge***